**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

STEVEN A. SAND, ILENE E. SAND,
and SAGALLE L. SAND
        Plaintiffs,

    v.                                     Case No. 03-C-1014

MILWAUKEE PUBLIC SCHOOLS, et al.
        Defendants.

---

### DECISION AND ORDER

      Pro se plaintiffs Steven and Ilene Sand believe that the Milwaukee Public Schools ("MPS") and others inadequately dealt with their daughter Sagalle's speech impairment. A state administrative law judge ("ALJ") held a hearing on the matter pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. Plaintiffs were dissatisfied with the outcome and appealed the ALJ's decision. Their appeal is before me now. In addition, plaintiffs filed a suit alleging claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA") and naming as defendants MPS and others who were involved in the matter, including the ALJ and MPS's lawyers. Defendants move for summary judgment on these claims. Plaintiffs' claims are sometimes hard to follow. However, as indicated as follows, none has merit.

### I. FACTS AND BACKGROUND

      Sagalle, who is now eight, was first evaluated by MPS when she was just under three years old. MPS created an individualized education plan ("IEP") and pursuant to the plan, provided her with speech therapy. MPS had difficulty scheduling the first annual

review of her progress because of plaintiffs' work schedules and finally scheduled it for October 2, 2001. Plaintiffs appeared but wanted the meeting rescheduled because October 2 was a religious holiday. Plaintiff Steven Sand became disruptive, and the police were called. Sand was arrested and subsequently pled no contest to a charge of disorderly conduct. MPS held a follow-up meeting on November 17, 2001, which one of its attorneys, Luis Arroyo of the Quarles & Brady firm, attended. Plaintiffs have named both Arroyo and Quarles & Brady as defendants in their § 1983 action, alleging that they conspired with MPS to deny plaintiffs' access to records and by making misrepresentations.

In May 2002, plaintiffs and MPS reached a mediation agreement pursuant to which Beth Hebert, a certified speech language pathologist, provided Sagalle with two thirty-minute therapy sessions per week. In a November 2002 IEP review meeting, Sagalle's IEP team reduced the sessions to one per week due to her continued progress. At that time, Hebert also informed the Sands that, given Sagalle's progress, her therapy might cease or be further reduced at the next IEP review.

In January 2003, noting Sagalle's continued progress and believing that ending therapy might be appropriate, Hebert requested a reevaluation, and MPS scheduled a meeting for February 21, 2003 and timely informed the plaintiffs. At the meeting, the IEP team concluded that Sagalle had exceeded all of the IEP goals, that she no longer met the criteria for speech and language impairment and that additional therapy was not required. In April 2003, plaintiffs requested a due process hearing regarding the determination that therapy was no longer necessary, and in May 2003, they requested an independent educational evaluation of Sagalle ("IEE"). MPS did not believe that an IEE was necessary

2

and therefore initiated a separate due process proceeding. The State of Wisconsin Division of Hearings and Appeals assigned ALJ William Coleman to hear the consolidated cases. On May 29, 2003, he commenced the hearing. After one witness testified, the parties elected to postpone the hearing and try to settle the case. Steven Sand states that as a result of his disability, he needs someone to read documents to him. ALJ Coleman indicated that he would be able to function as a reader for Steven Sand during the due process proceedings. Assistant city attorney Susan Bickert represented MPS. Plaintiffs have named her as a defendant in their § 1983 suit alleging that during the settlement conference she failed to accommodate plaintiff Steven Sand's reading disability. The settlement negotiations failed, and on July 14, 2003, the hearing resumed.

In September 2003, the ALJ rendered his decision. He concluded that Sagalle's speaking was age-appropriate and that she did not have a speech impairment. He also concluded that MPS had complied with IDEA's requirements and had provided plaintiffs with timely access to all records to which they were entitled. Finally, he concluded that MPS was not required to conduct an IEE.

## II. DISCUSSION

I first discuss plaintiffs' appeal from the ALJ's decision. As I indicated in a previous order, plaintiffs may pursue their own IDEA claims, Mosely v. Bd. of Edu., 434 F.3d 527 (7th Cir. 2006), but not Sagalle's. Narvin v. Park Ridge Sch. Dist. 64, 270 F.3d 1147 (7th Cir. 2001). Where, as here, no new evidence is submitted on appeal. I give considerable deference to the hearing officer's findings, Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997), but review his legal conclusions de novo. Morton Cmty. Sch. Dist. No. 709 v. J.M., 152 F.3d 583, 588 (7th Cir. 1998).

In their appeal, plaintiffs raise several claims.[1]  First, they argue that there were denied "an impartial due process hearing" as required by 20 U.S.C. § 1415(b)(2) because Coleman was biased against them.  Plaintiffs challenge Coleman's impartiality on the grounds that: (1) he was a state employee and a class action suit was pending against MPS; (2) that he allowed MPS to use different lawyers during the hearing; (3) that he did not allow plaintiffs to present timely opening statements; and (4) that he did not act as a reader for plaintiff Steven Sand.

These claims all fail.  Plaintiffs present no facts supporting their claim that Coleman was biased.  The facts that Coleman was a state employee and that someone was suing MPS do not give rise to an inference of bias.  Nor does the fact that he allowed MPS to substitute lawyers.  As to plaintiffs' opening statement, the record indicates that they started to examine witnesses before making their opening statement, but as soon as they realized this and brought it up, Coleman allowed them to make their statement.  As to the ALJ serving as a reader, apparently plaintiffs wanted Coleman to read to Steven Sand during the settlement conference, but they never requested that he do so.  Coleman

---

[1]Plaintiffs failed to present several of the claims they assert here in the due process hearing.  These claims must be dismissed for failure to exhaust.  McCormick v. Waukegan Sch. Dist. No. 60, 374 F.3d 564 (7th Cir. 2004).  Such claims include plaintiffs' claim that the district failed to provide them with Sagalle's summer school records, plaintiffs' claim regarding the placement of a screen during a therapy session, and plaintiffs' claim regarding MPS's failure to notify parents of an IEP meeting prior to the meeting.  See, e.g., Id. at 568 (noting examples of claims that must be exhausted, including lost educational opportunities).

Additionally, plaintiffs' claims arising prior to April 12, 2002 are barred by the one year statute of limitations found in Wis. Stat. § 115.80(1)(a)(1).  Such limitation may be imposed only upon a showing that parent received notification of their due process rights.  Here, the ALJ properly applied this one year statute of limitations to plaintiffs' claims, as Steven Sand testified in his deposition that he "appropriately" received notification of his due process rights. (Steven Sand Dep. ¶ 119:7-21.)

4

indicated that he did not normally participate in settlement conferences.  This is hardly an indication of bias.  On the one occasion during the hearing that Steven asked him to read something to him during the due process hearing, Coleman did so.

Plaintiffs next challenge the fairness of MPS's evaluation of Sagalle and the ALJ's conclusion that she was not disabled.  The IDEA requires states to provide a child with a disability a free appropriate public education ("FAPE").  See Bd. of Educ. v. Rowley, 458 U.S. 176 (1982).  When a party appeals from an administrative decision, in determining whether a FAPE has been provided, a court asks: (1) whether the state complied with IDEA's procedural requirements, and (2) whether the IEP was reasonably calculated to provide an educational benefit to the child.  Id. at 206-07.  A denial of procedural rights is not per se a denial of a FAPE.  Rather, it must cause substantive harm.  Substantive harm occurs when the procedural violations in question seriously infringe upon the parents' opportunity to participate in the IEP process, Knable ex rel. Knable v. Bexley Sch. Dist., 238 F.3d 755, 764 (6th Cir. 2001), or when they deprive a child of an educational opportunity.  Alex R. ex rel. Beth R. v. Forrestville Valley Cmty, Unit Sch., 375 F.3d 603, 613 (7th Cir. 2004).

In the present case, MPS complied with IDEA's procedural requirements as defined in the implementing regulations.  See 34 C.F.R. § 300.533 and its subsections.  MPS notified plaintiffs in advance of the February 21, 2003 meeting that Sagalle's speaking had improved such that at the meeting, the IEP team might decide to discontinue therapy. Prior to the meeting, plaintiffs did not request additional testing.  Further, they attended the meeting.  Plaintiffs contend that the fact that IEP team members spoke in preparation for the meeting denied them meaningful participation in the process.  However, IDEA does not

5

bar professionals from preparing for a meeting. Plaintiffs also argue that MPS failed to provide them with the results of an informal test that Sagalle's therapist administered and with the therapist's personal notes. However, Sagalle's IEP authorized the therapist to administer an informal test without advising plaintiffs of the results, and the therapist provided plaintiffs with a notebook containing information similar to that in her personal notes. Thus, plaintiffs do not show that MPS violated any of their procedural rights or interfered with their participation in the IEP. Rather, the record indicates that plaintiffs were deeply involved in Sagalle's treatment, and that MPS provided them will all pertinent information. Plaintiffs present nothing that suggests that I should disturb the ALJ's conclusions on this point.

Nor do plaintiffs establish that MPS denied Sagalle appropriate education opportunities. The ALJ concluded that Sagalle did "not demonstrate consistent errors in speech sound production beyond the time when 90% of typically developing children," have acquired the ability to produce speech. (Sept. 9, 2003 ALJ Findings of Fact ¶ 15.) Thus, he concluded that Sagalle was not disabled and that MPS satisfied the standard provided in Wis. Stat. § 118.125(1)(d). The testimony at the due process hearing and the record of the February 21 IEP team meeting support the ALJ's conclusions.

For the above reasons, I will affirm the decision of the ALJ in all respects.

I turn now to plaintiffs' § 1983/ADA action. In considering defendants' summary judgment motions, I take the evidence and all reasonable inferences therefrom in the light most favorable to plaintiffs. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). I will grant defendants' motion only if there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

6

248 (1986). I note that defendants provided plaintiffs with the required notice to pro se litigants regarding failing to respond to a summary judgment motion. Timms v. Frank, 953 F.2d 281, 285 (7th Cir. 1992). As previously indicated, plaintiffs' claims are without merit. Further, they do not warrant extensive discussion. However, I will briefly address each of their claims.

Plaintiffs first attempt to assert a § 1983 claim against MPS based on the Federal Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232(g). However, plaintiffs have no legal right to enforce this statute under § 1983. Gonzaga Univ. v. Doe, 536 U.S. 273, 278 (2002). Second, plaintiffs contend that defendants violated their right to equal protection of the law. However, plaintiffs identify no similarly situated persons to whom MPS provided better treatment and no evidence that defendants intended to deprive them of equal protection. See, e.g., Crowley v. McKinney, 400 F.3d 965, 972 (7th Cir. 2005); see also Levenstein v. Salafsky, 414 F.3d 767, 776 (7th Cir.2005).

Third, Steven Sand also argues that MPS violated his First Amendment rights were violated in connection with his disorderly conduct arrest. However, he names no one who was involved in that incident as a defendant, Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir.1994), and he presents no evidence suggesting that MPS can be held responsible on a policy or custom theory. See McTigue v. City of Chi., 60 F.3d 381, 382 (7th Cir.1995). Fourth, plaintiff alleges that his Fourth Amendment rights were violated in connection with the arrest. However, again he fails to name as defendants persons involved in the arrest and presents no evidence that MPS committed misconduct.

Fifth, plaintiffs allege that MPS violated their rights to substantive due process of law by failing to provide certain records relating to Sagalle's speech therapy. In order to

7

establish such a violation, plaintiffs have to show that one or more of the defendants violated a liberty interest, Meyer v. Nebraska, 262 U.S. 390, 399 (1923), or exercised power over them in some kind of arbitrary fashion. See Doe v. City of Lafayette, 377 F.3d 757 (7th Cir. 2004). Plaintiffs do not make such a showing. See, e.g., Fields v. Palmdale Sch. Dist., 427 F.3d 1197, 1206 (9th Cir. 2005).

Sixth, plaintiff Steven Sand alleges that defendants violated the Americans with Disability Act and the Rehabilitation Act by not assisting him with reading during the proceedings. However, he presents no evidence either that he is disabled or that defendants failed to accommodate him such that he was harmed. Ilene Sand was available to read to him on all relevant occasions. Seventh, plaintiffs seek to assert IDEA claims under § 1983. However, a determination that school officials complied with the IDEA's substantive and procedural mandates precludes a separate § 1983 claim. Monticello Sch. Dist. No. 25 v. George L. on Behalf of Brock L. 102 F.3d 895, 904 (7th Cir. 1996). As indicated previously, plaintiffs failed to establish an IDEA violation.

Next, plaintiffs assert § 1983 claims against ALJ Coleman. However, Coleman is entitled to judicial immunity because all of plaintiff's claims against him involve actions he took that were judicial in nature. See Stump v. Sparkman, 435 U.S. 349, 356 (1978); see also Lowe v. Letsinger, 772 F.2d 308, 312 (7th Cir.1985). Finally, plaintiffs contend that defendants Arroyo and Quarles and Brady conspired with MPS employees to deprive them of their rights under IDEA. However, plaintiffs present no evidence supporting the existence of a conspiracy or of any other element necessary to establish liability under a conspiracy theory. See Goetzke v. Ferro Corp., 280 F.3d 766, 778 (7th Cir. 2002). As such, plaintiffs' federal claims against Arroyo and Quarles and Brady must be dismissed.

8

Thus, I will grant defendants' motions for summary judgment as to all of plaintiffs' claims. Plaintiffs additionally allege state law claims. However, I decline to exercise supplemental jurisdiction over such claims.

### III. CONCLUSION

Therefore, for the reasons stated,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**, defendants' motions for summary judgment are **GRANTED**, and this case is **DISMISSED.**

Dated at Milwaukee, Wisconsin this 15 day of September, 2006.

/s_____
LYNN ADELMAN
District Judge

9

Case 2:03-cv-01014-LA   Filed 09/15/06   Page 9 of 9   Document 188